11-1188-cr
United States v. Colasuonno

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: November 15, 2011      Decided: October 12, 2012)

Docket No. 11-1188-cr

UNITED STATES OF AMERICA,

*Appellee*,

v.

PHILIP COLASUONNO,

*Defendant-Appellant*.

Before:

KEARSE, WALKER, and RAGGI, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*), resentencing defendant to four months' incarceration after he was found to have willfully violated probation by failing to pay ordered restitution. Defendant, who filed for bankruptcy after his initial sentencing, submits that the automatic stay provision of the Bankruptcy Code, see 11 U.S.C. § 362(a), temporarily relieved him of

his restitution obligations and precluded the district court from revoking his probation for failing to pay restitution. Alternatively, he submits that the record evidence did not permit the district court to reject his advice-of-counsel defense to the charged violation of probation. In any event, he asks this court to modify the amended judgment to reconcile a purported inconsistency between the written and oral sentence regarding his obligation to pay restitution while incarcerated.

AFFIRMED IN PART and DISMISSED IN PART.

---

DANIEL W. LEVY (Katherine Polk Failla, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

EDWARD S. ZAS, Federal Defenders of New York, Inc., New York, New York, *for Defendant-Appellant*.

---

REENA RAGGI, *Circuit Judge*:

Defendant Philip Colasuonno, who stands convicted of substantive and conspiratorial bank fraud and tax crimes, appeals from an amended judgment entered on April 6, 2011, in the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) resentencing him to four months' imprisonment on the substantive tax count upon a finding that Colasuonno violated his original sentence of probation by willfully failing to pay court-ordered restitution. Colasuonno, who declared bankruptcy after his initial sentencing,

2

submits that the automatic stay provision of the United States Bankruptcy Code, see 11 U.S.C. § 362(a), temporarily halted his obligation to pay restitution and barred the district court from revoking his probation for nonpayment. This argument presents us with a question of first impression in this Circuit as to what effect, if any, the Bankruptcy Code's automatic stay provision has on court-ordered conditions of a criminal sentence or proceedings to address violations of those conditions. We conclude that such orders and proceedings fall within an express exception to the automatic stay because they constitute a "continuation of [the] criminal action or proceeding." Id. § 362(b)(1). In the alternative, Colasuonno argues that he relied in good faith on advice of counsel in not paying restitution and that the record evidence does not support the district court's rejection of this defense. Because this argument is also meritless, we affirm the amended judgment of conviction.

Insofar as Colasuonno, who has now completed his four-month incarceratory sentence, asks this court to modify the amended judgment to clarify that he was under no obligation to pay restitution while incarcerated, we dismiss that part of his appeal as unripe for adjudication.

## I.    **Factual Background**

### A.    Colasuonno's Conviction and Initial Sentencing

On November 2, 2006, Colasuonno was found guilty after a jury trial of substantive and conspiratorial bank fraud, see 18 U.S.C. §§ 1344, 1349, relating to deceitfully inflated financial statements that Colasuonno and his brother Dominick submitted to J.P. Morgan

3

Chase in order to secure business loans from that institution. Thereafter, Colasuonno waived indictment and, on June 18, 2007, pleaded guilty to an information further charging him with conspiracy to commit tax fraud and aiding and abetting the preparation of false tax returns. These crimes originated in his "off the books" cash payments to certain employees over the course of five years and in his resulting underpayment of $781,467 in payroll taxes. See 26 U.S.C. § 7206; 18 U.S.C. § 371.

On July 19, 2007, in a consolidated proceeding, the district court sentenced Colasuonno principally to time served (one day) with concurrent terms of five years' supervised release on the two bank fraud counts and the tax fraud conspiracy count, and to a concurrent five years' probation on the false tax preparation count. In explaining its decision not to sentence Colasuonno within the recommended Guidelines prison range of 46 to 57 months for his crimes, the district court cited Colasuonno's serious health problems. The court nevertheless imposed special conditions on Colasuonno's probation, confining him to his home for 46 months and requiring him to pay restitution to the Internal Revenue Service ("IRS") in the amount of $781,467. The judgment of conviction directed Colasuonno to cooperate with the IRS in working out a schedule for such repayment.

B.     Colasuonno's Initial Failure To Pay Restitution Prompts a Court-Ordered Schedule for Monthly Payments

For almost a year after sentencing, Colasuonno made not a single payment toward the restitution ordered by the district court. This prompted the district court to issue a summons

4

requiring Colasuonno to appear and to answer a charge that he had failed to abide by a condition of his probationary sentence. A number of hearings ensued at which Colasuonno, who had a monthly income of $7,059 dollars from Social Security benefits and private disability insurance, disputed whether he could be compelled to use the insurance payments to satisfy restitution.[1] The district court resolved this question against Colasuonno and, on December 12, 2008, ordered that, beginning January 15, 2009, Colasuonno pay 15% of his monthly income—$1,058.55—toward restitution. When Colasuonno's attempts to secure a stay or modification of this payment schedule proved unsuccessful, he started to make the ordered payments, so that by July 15, 2009, he had paid approximately $6,630 in restitution.

C.     Colasuonno Files a Chapter 7 Bankruptcy Petition

On July 24, 2009, without notice to either the district court or the Probation Department, Colasuonno and his wife jointly filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. See 18 U.S.C. § 3563(a)(7) (requiring defendant on probation to notify court of any material change in economic circumstances that might affect ability to pay restitution).

When, on September 3, 2009, Colasuonno again moved in the district court for modification of his restitution schedule, citing financial hardship, he made no mention of the pending bankruptcy petition, much less did he indicate that it would affect his ability to pay restitution. On October 21, 2009, the district court denied modification, observing that

_____

[1] This amount does not reflect an additional $6,020 in monthly income being received by Colasuonno's wife.

5

Colasuonno's professed financial hardship arose from his "own choices and preferences," including his expenditures on "unnecessary luxuries." Order Denying Request for Modification of Restitution Payment Schedule at 3, No. 05-cr-1110 (Oct. 21, 2009), ECF No. 112.

That same day, Colasuonno moved pro se for reconsideration, for the first time revealing his bankruptcy filing but not arguing that it relieved him of his obligation to pay restitution on the schedule set by the court. The district court granted reconsideration on October 27, 2009, and directed Colasuonno to provide further information about his financial condition. Instead, Colasuonno filed a notice of appeal, divesting the district court of jurisdiction. Subsequently withdrawing that appeal, Colasuonno again sought reconsideration of the restitution payment schedule, which the district court denied on January 20, 2010, without prejudice to renewal "after good faith negotiations, providing full knowledge to the [bankruptcy] trustee." Endorsed Letter Ruling, No. 05-cr-1110 (Jan. 20, 2010), ECF No. 117.

D.     The Probation Violation Proceeding

Colasuonno continued making full restitution payments through November 2009. Although the district court never reduced the ordered monthly payment, from December 2009 through February 2010, Colasuonno paid only $300 per month toward restitution, after which he ceased paying restitution altogether. In total, he had paid $11,949 toward the ordered $781,467 restitution.

6

In April 2010, some nine months after filing for bankruptcy, Colasuonno first suggested—to his probation officer—that the automatic stay afforded by the Bankruptcy Code relieved him of any obligation to pay restitution. On October 20, 2010, the district court issued a summons for Colasuonno to appear and to answer the charge that he had violated his probation by failing to make a good faith effort to pay the ordered restitution.

In defending against the charged violation, Colasuonno's counsel argued in the alternative that (1) "the automatic stay should allow [Colasuonno] to forego restitution payments until the bankruptcy court rules on a reorganization," and (2) Colasuonno did not willfully violate probation because he relied in good faith on his bankruptcy counsel, who advised him that he need not pay restitution while the automatic stay was in effect.[2] Robert M. Baum Letter to Judge Hellerstein at 2 (Jan. 5, 2010) (unavailable on ECF).

On February 18, 2011, the district court conducted an evidentiary hearing at which both Colasuonno's wife and his bankruptcy counsel testified concerning the advice provided. The district court rejected Colasuonno's advice-of-counsel defense, finding that he had failed fully to disclose to bankruptcy counsel relevant facts about his restitution obligation, specifically, that payment was a condition of a criminal sentence. The district court further ruled that the automatic stay of the Bankruptcy Code did not operate to halt Colasuonno's

---

[2] Insofar as Colasuonno raised other defenses that he does not pursue on this appeal, we deem them forfeited and do not discuss them further. See Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (applying general rule that argument not pressed on appeal "is therefore waived, and we will not consider it").

obligation to comply with conditions of his criminal sentence, including the condition of payment of restitution. Accordingly, it found Colasuonno in violation of probation.

E.     Colasuonno's Resentencing

On March 17, 2011, after affording the parties an opportunity for briefing and oral argument, the district court revoked Colasuonno's probationary sentence and, reviewing the sentencing factors specified in 18 U.S.C. § 3553(a), resentenced Colasuonno on the substantive tax crime of conviction to four months' imprisonment followed by a one-year term of supervised release. As a special condition of supervised release, the district court required Colasuonno to pay restitution in the amount of $846,913.61 (as now adjusted for interest) in monthly installments equal to 15% of Colasuonno's gross monthly income.

In imposing this sentence, the district court found that "cheating" lay at the heart of both Colasuonno's crime of conviction and his violation of probation; that the victim of Colasuonno's cheating was not simply the government, but the public at large; that Colasuonno's failure to pay restitution obligations had been "willful"; that the record revealed Colasuonno's "efforts to use every single potential advantage not to pay [his] restitution obligations"; and that, consistent with these efforts, Colasuonno had "used bankruptcy as an excuse" to avoid paying restitution. Resentencing Tr. 51, 05-cr-1110 (Mar. 7, 2011).

Colasuonno filed a timely notice of appeal. Failing to secure bail pending appeal from either the district court or this court, he served his four-month prison term and was released from custody on September 15, 2011.

## II.    Discussion

A.    The Bankruptcy Code's Automatic Stay Does Not Affect the Conditions of a Criminal Sentence of Probation, Including a Restitution Condition, Nor Does It Bar Revocation Proceedings for Noncompliance

Under § 362(a) of the Bankruptcy Code, the filing of a bankruptcy petition automatically "operates as a stay, applicable to all entities" of, inter alia:

(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement . . . of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate . . . ; [and]

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 362(a). This automatic stay is a "fundamental debtor protection[]," giving a "breathing spell from the collection process" so debtors can "attempt a repayment or reorganization plan to satisfy existing debt." Eastern Refractories Co. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998); see generally SEC v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (discussing intent behind automatic stay).

The reach of § 362(a) is, however, cabined by its own language, which affords automatic stay protection "[e]xcept as provided in subsection (b)." 11 U.S.C. § 362(a). Subsection (b) of § 362 states, in pertinent part, that the filing of a bankruptcy petition "does

9

not operate as a stay—(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor." Id. § 362(b)(1).

In invoking § 362(a) in the district court, Colasuonno argued that the automatic stay relieved him of the obligation to make restitution payments during the pendency of his reorganization proceeding. Baum Letter to Judge Hellerstein at 2. Before this court, Colasuonno recast his argument, maintaining that the automatic stay operated on the revocation proceeding itself to "bar[] the district court from revoking [his] probation based solely on his non-payment of restitution." Appellant's Br. 20. At oral argument, counsel confirmed that Colasuonno was relying principally on the latter argument, but reiterated that the result of the automatic stay's application to the probation revocation proceeding was that Colasuonno effectively did not need to pay restitution.[3]

Courts have rejected claims of both varieties in similar contexts. See United States v. Caddell, 830 F.2d 36, 39 (5th Cir. 1987) (rejecting argument that automatic stay "suspend[ed] the restitutory condition of [defendant's] probation"); Coulter v. Aplin (In re Coulter), 305 B.R. 748, 753 (Bankr. D.S.C. 2003) (rejecting argument that probation violation hearing, held after failure to pay restitution, violated automatic stay). We do the same here, concluding that proceedings to enforce a probationary sentence constitute the

---

[3] Indeed, although Colassuono stops short of articulating such a theory, his argument reduces to the proposition that the filing of a bankruptcy petition thus stays the criminal judgment of sentence itself.

10

"continuation of a criminal action or proceeding against the debtor" and thus fall within the specific exception to the automatic stay codified at 11 U.S.C. § 362(b)(1).[4]

### 1. The Statutory Text of § 362(b)(1)

Because applicability of the § 362(b)(1) exception to the Bankruptcy Code's automatic stay presents a question of law, our standard of review is de novo. See United States v. Bari, 599 F.3d 176, 178 (2d Cir. 2010). That review necessarily begins with the statutory text to determine whether the language, viewed in context, unambiguously reveals Congress's intent. See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). If it does, no further inquiry is necessary. "Only if we discern ambiguity do we resort first to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 423 (2d Cir. 2005) (citations omitted); see also Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008).

---

[4] While no party questions our jurisdiction to decide this question, we are under an independent obligation to consider the matter. See Quigley Co. v. Law Offices of Peter G. Angelos (In re Quigley Co.), 676 F.3d 45, 50 (2d Cir. 2012). Although "relief for a violation of the [automatic] stay must be sought in the Bankruptcy Court," Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank, 236 F.3d 117, 121 (2d Cir. 2001), which normally "has exclusive jurisdiction to determine the applicability of the automatic stay and to grant relief from the stay," 3 Collier on Bankruptcy ¶ 362.08 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.), we have clarified that "[w]hether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of . . . the court within which the litigation is pending," Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.), 765 F.2d 343, 347 (2d Cir. 1985). Because this appeal concerns a probation violation proceeding and resentencing, litigation otherwise undoubtedly within the jurisdiction of the district court, see 18 U.S.C. § 3565; Fed. R. Crim. P. 32.1(b)(2), as well as within our own jurisdiction to review, see United States v. Lettieri, 910 F.2d 1067, 1068 (2d Cir. 1990), we may therefore consider the question of whether the automatic stay barred such proceedings.

The plain language of § 362(b)(1) exempts the "commencement or continuation of a criminal action or proceeding against the debtor" from the automatic stay afforded by § 362(a). Because the term "criminal action" is not defined in the Bankruptcy Code, it bears its "ordinary or natural meaning," FDIC v. Meyer, 510 U.S. 471, 476 (1994), which is "[a]n action instituted by the government to punish offenses against the public," Black's Law Dictionary 34 (9th ed. 2009). A "criminal proceeding" is commonly understood as "a proceeding instituted to determine a person's guilt or innocence or to set a convicted person's punishment; a criminal hearing or trial." Id. at 1324. Because these definitions overlap to some degree, we construe Congress's use of both words to signal its intent to create an exception for any action or proceeding that relates to an adjudication of guilt or that punishes a defendant for crimes.[5] See Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1086 (9th Cir. 2000) ("[I]n the case of the automatic stay, Congress has specifically subordinated the goals of economic rehabilitation and equitable distribution of assets to the states' interest in prosecuting criminals."). An alternative construction would "violate[] the established principle that a court should give effect, if possible, to every clause and word of a statute." Moskal v. United States, 498 U.S. 103, 109–10 (1990); see Lamie v. United States Trustee, 540 U.S. 526, 536 (2004) (reaffirming "preference for avoiding surplusage" in construing Bankruptcy Code where such avoidance "does not lead to absurd results"). Thus,

---

[5] To the extent Colassuono cites cases from other circuits stating that exceptions to the automatic stay should be construed narrowly, see, e.g., In re Grede Foundries, Inc., 651 F.3d 786, 790 (7th Cir. 2011), our construction of § 362(b)(1) does not violate this principle, as it derives from the plain language of the statute.

12

a hearing to set punishment, i.e., a sentencing, undoubtedly qualifies as a criminal proceeding, but so too does a hearing to ensure that a defendant is complying with the conditions of sentence. Such a construction is reinforced by language in § 362(b)(1) applying that statutory exception to the "commencement or continuation" of a criminal action or proceeding. The common meaning of "continuation" reaches broadly to cover not only an "uninterrupted extension" of an activity, but also "the action of carrying on or resuming after an interruption or break." Webster's Third New International Dictionary 493 (1986). Further, "continuation" means "the causing of something to continue," as illustrated by an example with particular relevance to this case: "payments made in continuation of" a legal obligation. Id.

With this understanding of the language of § 362(b)(1), we easily conclude that Colasuonno's criminal prosecution for bank fraud and tax crimes constituted a criminal action. We further conclude that, for purposes of § 362(b)(1), the criminal action did not end when the judgment of conviction became final. Rather, the action continued through satisfaction of the judgment because all duties imposed on the defendant, as well as the court's authority to hold the defendant to account for those duties, derive from, and in that respect continue, the original criminal action. To hold otherwise would be to ignore the fact that the purpose of a criminal action is not simply to charge a defendant with criminal conduct or to try him on such charges. It is to punish the defendant for offenses committed against the public. See Black's Law Dictionary 34. Although a criminal action may

13

commence with a charge, it continues through the range of pre-trial conferences and hearings, through trial itself, and, where guilt is found, through all the proceedings that determine sentence, provide for compliance with sentence, and address violations of sentence. Thus, the language of § 362(b)(1) unambiguously signals Congress's intent to exempt all parts of the process aimed at punishing a defendant for criminal conduct from any interruption by the Bankruptcy Code's automatic stay. Accordingly, the automatic stay Colasuonno obtained through his bankruptcy filing did not preclude the government from enforcing the conditions of his probationary sentence, including the condition that he pay restitution. Nor did the automatic stay—effectively or otherwise—relieve Colasuonno of his obligation to pay restitution.

While we think the plain meaning of the text, viewed in context, is sufficient to reach this conclusion, it is reinforced by the legislative history of § 362(b), which emphasizes that "bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension." S. Rep. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840. A failure to recognize enforcement of the conditions of a probationary sentence or proceedings to address violations of probation as a "continuation" of the criminal action that resulted in such a sentence would allow the bankruptcy laws to become a haven for criminal offenders, allowing them to interrupt, if not completely frustrate, their criminal punishment.

Colasuonno's counsel conceded at oral argument that § 362(a) and (b)(1) could not fairly be construed to relieve a criminal defendant from his duty to comply with conditions of probation that bar the defendant from committing another crime, see 18 U.S.C. § 3563(a)(1); prohibit him from possessing a controlled substance, see id. § 3563(a)(3); or require him to register as a sex offender, see id. § 3563(a)(8). Nor does the automatic stay bar a district court from conducting a probation revocation hearing regarding such violations. Insofar as Colasuonno nevertheless maintains that the § 362(b)(1) exception to the automatic stay should not apply to a restitution condition of probation, we discuss this argument more fully infra Part II.A.3. We consider it useful at the outset, however, to note that a restitution order is not imposed because a defendant has over-extended himself financially to various creditors. A restitution order arises from a defendant's commission of a crime. Indeed, "[i]n each order of restitution" for a crime, the court is required to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Thus, while we have characterized the purpose of restitution as "essentially compensatory," United States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006), the compensation is for no ordinary debt, nor is the person compensated simply a creditor. Rather, restitution compensates a crime victim, to the extent money can do so, for actual injuries sustained, whether to body or property, from a criminal offense. See id. The Supreme Court recognized as much in Kelly v. Robinson, 479 U.S. 36 (1986), when it stated that "[a]lthough

15

restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed," a criminal sentencing, "undermines that conclusion." Id. at 52 (quoting 11 U.S.C. § 523(a)(7) in holding that restitution orders are not dischargeable under Chapter 7).

The only one of our sister circuits to have considered the question has similarly construed § 362(b)(1). See United States v. Caddell, 830 F.2d at 38–39 [5th Cir.] (rejecting argument that bankruptcy filing precluded imposition of restitution or suspended that condition of probation so as to bar revocation for nonpayment). A number of district courts have also concluded that "[a]ction by the government to enforce the terms of a sentence [is] plainly a continuation of the entire criminal proceeding." United States v. Troxler Hosiery Co., 41 B.R. 457, 460 (M.D.N.C. 1984); see Bryan v. Rainwater, 254 B.R. 273, 278 (N.D. Ala. 2000) ("Because a criminal sentence would be meaningless absent authority to ensure that it is complied with, an action by the state to enforce the terms of a sentence is clearly a continuation of a criminal action."). A leading commentator on bankruptcy agrees, observing that "[i]t seems clear that a criminal court may revoke probation, or penalize the debtor, for the failure to pay criminal restitution" under § 362(b)(1). 3 Collier on Bankruptcy ¶ 362.05[1][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Further reinforcing recognition of a probation violation hearing as a continuation of the criminal action sentencing the defendant to probation is 18 U.S.C. § 3565(a), which provides (1) for probation revocation hearings to be conducted pursuant to Fed. R. Crim. P. 32.1, and (2) for decisions as to whether probation should be continued or revoked and a defendant

16

resentenced to be made by reference to the criminal sentencing factors identified in 18 U.S.C. § 3553(a). The fact that a violation of probation can result in a defendant being resentenced for the original crime of conviction, see 18 U.S.C. § 3565(a)(2); United States v. Verkhoglyad, 516 F.3d 122, 130 n.6 (2d Cir. 2008), is an additional reason for identifying a revocation proceeding, for purposes of 11 U.S.C. § 362(b)(1), as a "continuation" of the criminal action commenced to achieve punishment, see generally Gardner v. Florida, 430 U.S. 349, 358 (1977) (recognizing sentencing as "critical stage of the criminal proceeding").

Nor are we persuaded to construe § 362(b)(1) more narrowly by Colasuonno's contention that it would be easy enough for the government to minimize any interruption in a defendant's compliance with a criminal sentence by applying to have the automatic stay lifted, presumably under 11 U.S.C. § 362(d). The Supreme Court has rejected a similar argument in the context of state criminal proceedings, observing that "apart from the burden on state officials of following and participating in bankruptcy proceedings, it is unseemly to require state prosecutors to submit the judgments of their criminal courts to federal bankruptcy courts." Kelly v. Robinson, 479 U.S. at 48 n.8. A comparable undue burden would fall on federal prosecutors if required to follow and participate in bankruptcy proceedings. See id. This is evident from the record, which shows that Colasuonno did not report his bankruptcy filing to prosecutors or the district court for three months despite the disclosure obligation within 18 U.S.C. § 3563(a)(7). The unseemliness of prosecutors submitting state criminal judgments to bankruptcy courts raises particular federalism

17

concerns, but it is also unseemly, perhaps to a different degree, to require federal judgments of conviction to be presented to bankruptcy courts for determinations as to whether the automatic stay renders those judgments temporarily immune from enforcement. See United States v. Caddell, 830 F.2d at 39 ("[T]he language in [Kelly] extends generally to penal sanctions of restitution without regard to whether the court imposing the sanction is a state or federal court.").

Thus, we construe the plain language of § 362(b)(1) to exempt from the automatic stay proceedings undertaken to enforce the conditions of a probationary sentence.

### 2. The § 362(b)(1) Exception Is Not Limited to Proceedings Affording a Defendant the Same Rights as Trial

In urging otherwise, Colasuonno relies on decisions by the Supreme Court and this court stating that a probation revocation hearing is not a criminal proceeding. See Minnesota v. Murphy, 465 U.S. 420, 435 & n.7 (1984); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); United States v. Carthen, 681 F.3d 94, 99 (2d Cir. 2012); United States v. Carlton, 442 F.3d 802, 807 (2d Cir. 2006). The argument is flawed in several respects. First, these cases reached that conclusion in the context of deciding whether a defendant facing revocation of probation was entitled to the same constitutional rights as a defendant facing prosecution.[6] See Minnesota v. Murphy, 465 U.S. at 435 & n.7 (holding that probationer's Fifth

[6] To the extent Colassuono cites language in Palma v. United States, 228 F.3d 323, 327 (3d Cir. 2000), stating that probation revocation hearings are civil proceedings, that case repeated the point in dictum while considering the unrelated question of whether a notice of appeal from a decision returning firearms to a defendant pursuant to 18 U.S.C. § 925(c) was subject to the time limit for criminal appeals in Fed. R. App. P. 4.

Amendment right to refuse to answer questions is limited to responses that would incriminate probationer); Gagnon v. Scarpelli, 411 U.S. at 790 (holding that defendant's right to counsel at probation revocation hearings is not absolute); United States v. Carthen, 681 F.3d at 99 (holding that Confrontation Clause and requirement of proof beyond reasonable doubt do not apply in revocation proceedings); see generally United States v. Carlton, 442 F.3d at 807 ("Because revocation proceedings generally have not been considered criminal prosecutions, they have not been subject to the procedural safeguards . . . associated with a criminal trial.").

The context of our review is quite different, focusing on a statute, § 362(b)(1), that creates a specific exception to the Bankruptcy Code's automatic stay for proceedings that commence or continue criminal actions or proceedings. Nothing in the text of § 362(b)(1) signals that the scope of the exception is to be determined by the rights afforded to a defendant in a particular proceeding. Indeed, any number of criminal proceedings afford a defendant less than the full panoply of rights mandated at trial. For example, the full protections of the Confrontation Clause do not apply to preliminary hearings, see United States v. Bell, 464 F.2d 667, 671–72 (2d Cir. 1972); bail proceedings, see United States v. Martir, 782 F.2d 1141, 1144–45 (2d Cir. 1986); or sentencing, see United States v. Martinez, 413 F.3d 239, 242–43 (2d Cir. 2005). Similarly, the requirement of proof beyond a reasonable doubt does not apply to suppression hearings, see United States v. Matlock, 415 U.S. 164, 177 & n.14 (1974); bail hearings, see 18 U.S.C. § 3142(f)(2); or sentencing, see United States v. Vaughn, 430 F.3d 518, 527 (2d Cir. 2005). Colasuonno does not suggest

19

that these proceedings fall outside the § 362(b)(1) exception, so as to be halted by the automatic stay.

Second, and more to the point, § 362(b)(1) does not exempt from the automatic stay only those proceedings that, by themselves, would qualify as a criminal action or proceeding. Rather, the text provides for the exception to reach activity that is a "continuation" of a criminal action or proceeding. Thus, whether or not a scheduling conference in a criminal case—at which the defendant need not even be present, see McKethan v. Mantello, 522 F.3d 234, 238 (2d Cir. 2008)—might by itself be deemed a criminal action or proceeding, because it ensures continuation of such an action § 362(b)(1) exempts the conference from the automatic stay as much as it exempts the trial for which such a conference would establish a schedule. The same reasoning applies with even more force here. Because a criminal action seeks, in the end, to punish a person for crimes committed against the public, orders that establish the conditions of a criminal sentence and proceedings that address possible violations of those conditions are both reasonably viewed as continuations of the criminal action, regardless of whether they would be deemed criminal actions or proceedings in and of themselves for purposes of affording the defendant the same rights as pertain at trial. Indeed, to allow an automatic stay to halt the operation of orders or proceedings intended to ensure compliance with a criminal sentence would frustrate the very purpose for which the criminal action was commenced.

20

3. No Exception to § 362(b)(1) Applies to a Probation Condition Requiring Payment of Restitution

Colasuonno nevertheless maintains that a restitution obligation is sufficiently different from other conditions of probation to warrant construing § 362(b)(1), as some bankruptcy courts have, not to apply to proceedings whose sole purpose is to collect restitution. See In re Barboza, 211 B.R. 450, 452 (Bankr. D.R.I. 1997) ("[I]f the sole objective of a post-petition probation hearing is to collect restitution, then that proceeding may be a violation of the automatic stay."); Washington v. Hale (In re Washington), 146 B.R. 807, 809 (Bankr. E.D. Ark. 1992). Even if the language of § 362(b)(1) supported the distinction drawn by these courts—which we do not think it does—Colasuonno is wrong in characterizing the sole purpose of his revocation proceeding as the collection of restitution. Rather, the proceeding sought to address the breach of trust placed in Colasuonno when the court initially decided to sentence him to a term of probation rather than incarceration for his substantive tax crime. See United States v. Verkhoglyad, 516 F.3d at 130 n.6; see also U.S.S.G. ch. 7, pt. A intro. cmt. 3(b) (explaining that probation violation proceedings sanction breach of trust, not violation conduct). Upon finding that Colasuonno breached that trust by employing every means available to avoid complying with the restitution condition of probation, the district court carefully reconsidered the statutory factors relevant to the tax crime of conviction under 18 U.S.C. § 3553(a) and, mindful of Colasuonno's related criminal conduct as well as his breach of trust, decided to revoke rather than continue probation and to resentence

Colasuonno to a term of four months' incarceration on the crime of conviction.  See 18 U.S.C. § 3565(a).  Consistent with our recognition that the purpose of a criminal action is to punish a defendant for offenses against the public, we conclude that Colasuonno's probation revocation hearing, which could, and did, result in his being resentenced for his tax crime, is properly viewed under § 362(b)(1) as the continuation of a criminal action without regard to whether the violation triggering revocation pertained to restitution or some other condition of probation.

Further, to the extent these bankruptcy courts relied, as does Colasuonno himself, on Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552 (1990), and Hucke v. Oregon, 992 F.2d 950 (9th Cir. 1993), subsequent events deprive both cases of whatever weight they initially bore.  In Davenport, a case holding that restitution orders qualified as dischargeable "debts" under Chapter 13, the Supreme Court rejected a government argument that dischargeability would conflict with the policy behind § 362(b)(1), observing in dictum that "[s]ection 362(b)(1) does not . . . explicitly exempt governmental efforts to collect restitution obligations from a debtor."  497 U.S. at 560.  The Court observed that it was not "irrational or inconsistent" for Congress to permit criminal offenses to be prosecuted during the pendency of a bankruptcy action while simultaneously precluding probation officials from enforcing restitution orders while the debtor sought Chapter 13 relief:

> Congress could well have concluded that maintaining criminal prosecutions during bankruptcy proceedings is essential to the functioning of government but that, in the context of Chapter 13, a

22

> debtor's interest in full and complete release of his obligations outweighs society's interest in collecting or enforcing a restitution obligation outside the agreement reached in the Chapter 13 plan.

Id. at 560–61.

In fact, Congress soon signaled a quite different policy choice in enacting the Criminal Victims Protection Act of 1990, Pub. L. 101-581, § 3, 104 Stat. 2865, thereby "expressly withdrawing the Bankruptcy Court's power to discharge restitution orders under" Chapter 13, Johnson v. Home State Bank, 501 U.S. 78, 83 n.4 (1991). By thus "overrul[ing] the result in Davenport," id., Congress itself "removed or weakened the conceptual underpinnings" of that decision, Neal v. United States, 516 U.S. 284, 295 (1996) (internal quotation marks omitted) (discussing in different context when deference is not owed to prior decisions). Indeed, because a Chapter 13 debtor no longer has any "interest in full and complete release of his [restitution] obligations," Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. at 561, the comparison drawn by the Court in Davenport and relied on by Colasuonno now lacks any foundational support. These circumstances not only absolve us from our usual obligation to accord great deference to Supreme Court dicta, see Donovan v. Red Star Marine Servs., 739 F.2d 774, 782 (2d Cir. 1984); they also suggest particular hazard in relying on Davenport's dictum to construe § 362(b)(1) to exempt from the automatic stay all revocation proceedings except those pertaining to nonpayment of restitution.

23

Insofar as the Ninth Circuit in <u>Hucke v. Oregon</u> was willing to draw such a distinction, <u>see</u> 992 F.2d at 953 (suggesting that if "revocation proceeding constituted collection efforts, then it would violate the automatic stay"), that same court subsequently rejected <u>Hucke</u>'s reasoning <u>en banc</u> and unanimously, concluding that it was "at odds with the plain words of the statute," <u>In re Gruntz</u>, 202 F.3d at 1085 (noting that language of § 362(b)(1) admits no "exception for prosecutorial purpose"). We too conclude that the plain language of § 362(b)(1) does not support a restitution exception.

In a further attempt to distinguish a failure to pay restitution from other probation violations, Colasuonno's counsel suggested at oral argument that revocation proceedings might be analyzed under § 362(b)(4), another exception to the automatic stay, which expressly excludes money judgments.[7] This limitation on the scope of § 362(b)(4) affords Colasuonno no relief. As its text indicates and legislative history confirms, § 362(b)(4) applies to actions in which "a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws." S. Rep. 95-989, at 52, <u>reprinted in</u> 1978 U.S.C.C.A.N. at 5838; <u>accord</u> <u>United States v. Troxler Hosiery Co.</u>, 41 B.R. at 459 (concluding that, as used in predecessor to § 362(b)(4), "police or regulatory power" refers to the administration and enforcement of

---

[7] In pertinent part, § 362(b)(4) exempts from the automatic stay "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment <u>other than a money judgment</u>." 11 U.S.C. § 362(b)(4) (emphasis added). Colasuonno's principal brief does not discuss § 362(b)(4) at all, and his reply brief only mentions the subsection in passing.

24

state laws affecting health, welfare, morals, and safety). Thus, we have previously applied this exception in the context of civil and administrative enforcement actions. See SEC v. Brennan, 230 F.3d at 67 (concluding that "money judgment" exclusion from § 362(b)(4) barred enforcement of repatriation order obtained in civil fraud proceeding); City of New York v. Exxon Corp., 932 F.2d 1020, 1022 (2d Cir. 1991) (holding that § 362(b)(4) allowed action by city seeking reimbursement of environmental cleanup costs); see also Board of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 39–40 (1991) (holding that proceeding by Federal Reserve alleging unsafe banking practices fit "squarely within § 362(b)(4)"); 3 Collier on Bankruptcy ¶ 362.05[5][b][i] (discussing cases applying this exception in "state bar disciplinary proceedings, employment discrimination actions, labor law enforcement proceedings, rent regulation enforcement, the enforcement of the minimum wage laws and enforcement of water quality control standards").

For reasons already discussed, we do not think a probation revocation proceeding is analogous to these civil and administrative actions, whether the charged violation relates to a condition requiring payment of restitution or some other condition. Probation is a form of criminal punishment, and the purpose of a probation revocation proceeding is to determine whether a defendant can comply with the conditions of that punishment or whether it is properly revoked and a new sentence imposed. In these circumstances, we conclude that Congress intended for probation revocation proceedings, a continuation of the criminal action that resulted in the probationary sentence at issue, to be exempted from the Bankruptcy

25

Code's automatic stay pursuant to § 362(b)(1) and that § 362(b)(4) is simply inapplicable.[8]

Indeed, the fact that Congress excluded the enforcement of money judgments from § 362(b)(4), see S. Rep. 95-989, at 52, reprinted in 1978 U.S.C.C.A.N. at 5838 (explaining that government should not receive "preferential treatment" in collecting money judgments "to the detriment of all other creditors"); accord SEC v. Brennan, 230 F.3d at 75, while not excluding from § 362(b)(1) the government's enforcement of restitution and fine components of criminal sentences, only reinforces our conclusion that Congress specifically intended to exempt from the automatic stay any proceedings that could reasonably be deemed to commence or continue a criminal action or proceeding, including proceedings to enforce the conditions of a probationary sentence, even if the condition pertains to the payment of restitution. See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 453 (2007) ("[W]here Congress has intended to provide . . . exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly." (omission in original; internal quotation marks omitted)).

We thus conclude, consistent with the text of § 362(b)(1) and the weight of reasoned authority, that the Bankruptcy Code's automatic stay did not—effectively or

---

[8] Although one bankruptcy court has construed both § 362(b)(1) and (b)(4) to encompass criminal proceedings, see United States v. Landstrom Distribs., Inc. (In re Landstrom Distribs., Inc.), 55 B.R. 390, 393 (Bankr. C.D. Cal. 1985), we agree with the courts that have rejected this reading, see 134 Baker St., Inc. v. Georgia, 47 B.R. 379, 381 (N.D. Ga. 1984); United States v. Troxler Hosiery Co., 41 B.R. at 459; see also Sacirbey v. Guccione, 589 F.3d 52, 66 (2d Cir. 2009) (setting forth canon of avoiding surplusage).

otherwise—absolve Colasuonno of his duty to comply with the restitution condition of his probationary sentence on the schedule set by the district court, nor did it bar the district court from revoking Colasuonno's probation in light of his willful violation of this condition of his criminal sentence.

B.    The District Court Reasonably Rejected Colasuonno's Advice-of-Counsel Defense

In the alternative, Colasuonno challenges the sufficiency of the evidence supporting revocation of his probation.  Specifically, he faults the district court's finding that he did not rely in good faith on the advice of bankruptcy counsel that the automatic stay relieved him of his restitution obligation and, in fact, willfully failed to comply with that condition.  See 18 U.S.C. § 3565 (authorizing court to revoke probation upon finding of violation); id. § 3614(b)(1) (allowing court to resentence defendant to imprisonment if "defendant willfully refused . . . or had failed to make sufficient bona fide efforts to pay" restitution).  In making this argument, Colasuonno assumes a "heavy burden," because a district court need only be "reasonably satisfied" that a probationer has failed to comply with the conditions of probation to revoke sentence.  United States v. Lettieri, 910 F.2d 1067, 1068 (2d Cir. 1990); see also United States v. Hooker, 993 F.2d 898, 900 (D.C. Cir. 1993) (suggesting "reasonably satisfied" standard may require less than preponderance of evidence).  We review the district court's violation determination for abuse of discretion, which we will not

27

identify with respect to findings of fact absent clear error.  See United States v. Carlton, 442 F.3d at 810.  A reviewing court will reject a finding of fact as clearly erroneous only when the record as a whole leaves it with "the definite and firm conviction that a mistake has been committed."  United States v. Iodice, 525 F.3d 179, 185 (2d Cir. 2008).  That is not this case.

It has long been understood in other contexts that to benefit from an advice-of-counsel defense, a party must show that he (1) "honestly and in good faith" sought the advice of counsel; (2) "fully and honestly la[id] all the facts before his counsel"; and (3) "in good faith and honestly follow[ed]" counsel's advice, believing it to be correct and intending that his acts be lawful.  Williamson v. United States, 207 U.S. 425, 453 (1908); accord United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1194 (2d Cir. 1989).  Each requirement must be satisfied.  Cf. United States v. Evangelista, 122 F.3d 112, 117 (2d Cir. 1997) (affirming denial of advice-of-accountant jury charge in tax fraud case for defendants' demonstrated failure to follow accountant's advice).  The district court found that Colasuonno's advice-of-counsel defense failed at the second step because he did not advise his bankruptcy attorney of the fact that his obligation to pay restitution derived from a criminal conviction and was a condition of a criminal sentence, nor did he provide the attorney with a copy of the restitution order, which would itself have revealed these critical facts.  Far from being clear error, this finding is amply supported by the record.

Bankruptcy counsel testified that he was not provided with a copy of the restitution order and did not remember ever being told that the restitution payments derived from a criminal case. Insofar as Colasuonno's wife testified that these facts had been provided to counsel, the district court was not required to credit her account. See Mathie v. Fries, 121 F.3d 808, 812 (2d Cir. 1997) ("[A] reviewing court owe[s] particularly strong deference where the district court premises its [factual] findings on credibility determinations." (internal quotation marks omitted)). Indeed, bankruptcy counsel stated that if he had known the omitted facts, he would have had to conduct more research to decide whether the obligation was subject to the automatic stay. This was sufficient to permit the district court to find that Colasuonno had failed fully and honestly to lay all facts before counsel as required to claim the benefit of an advice-of-counsel defense.

Colasuonno submits that the district court could not reach this conclusion absent evidence that counsel would, in fact, have given different advice had he known the information Colasuonno failed to disclose. We are not persuaded. No such evidence was required to sustain the district court's finding that Colasuonno did not "fully and honestly lay[] all the facts before his counsel." Williamson v. United States, 207 U.S. at 453. In any event, bankruptcy counsel's admission that he would have had to do more research to offer any advice regarding the effect of the automatic stay on Colasuonno's restitution obligation was enough to permit the district court to conclude that the failure to disclose this

29

information precluded Colasuonno from successfully invoking an advice-of-counsel defense.

No different conclusion is warranted by Colasuonno's argument, raised for the first time on appeal, that as a non-lawyer, he should not have been expected to appreciate the relevance of the fact that his restitution obligation was imposed in a criminal case. See In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 132 (2d Cir. 2008) (stating that appellant waives "argument by failing to present it below"). Whether or not a party might ever be excused for not laying before counsel facts whose relevance the party could not have been expected to recognize, that is not this case. As the district court correctly stated, the restitution order was "the most relevant part of the proceeding" to be disclosed to counsel in seeking advice. Hearing Tr. 50, No. 07-cr-555 (Feb. 18, 2011), ECF No. 30. Thus, even if Colasuonno had not defaulted this argument, we would reject it as a basis for identifying abuse of discretion.

Of course, in finding Colasuonno not to have relied in good faith on the advice of counsel, but instead to have willfully violated the restitution condition of his probation, the district court was entitled to rely on unique insights gained from its direct dealings with Colasuonno throughout the litigation leading to his conviction, sentencing, and enforcement of the sentence. See United States v. Jones, 531 F.3d 163, 171 & n.4 (2d Cir. 2008) (recognizing that "district judges work with the benefit of insights and judgments . . . into persons [and] crimes" often not conveyed by record). These insights prompted the district

court to conclude that, since sentencing, Colasuonno had devoted his "efforts to us[ing] every single potential advantage not to pay [his] restitution obligations." Resentencing Tr. 51. Not only had he failed to cooperate with the IRS in developing a schedule for payment of restitution, but also, after the district court itself set a schedule, Colasuonno made repeated, if unsuccessful, efforts to stay its operation or to modify its terms. At the same time Colasuonno claimed financial hardship to support these efforts, he continued to enjoy "unnecessary luxuries." Order Denying Request for Modification of Restitution Payment Schedule at 3. These facts, together with Colasuonno's failure to disclose his July 2009 bankruptcy petition even in the detailed financial affidavits he filed in September 2009, prompted the district court to find that Colasuonno was merely "us[ing] bankruptcy as an excuse" to avoid further restitution payments and had "not in good faith" relied on counsel's advice. Resentencing Tr. 51.

We identify no clear error in these findings or in the determination that Colasuonno willfully violated the condition of his probationary sentence requiring him to pay restitution. The finding that Colasuonno's failure was willful amply justified the conclusion that he had not made a good faith effort. See 18 U.S.C. § 3614(b)(1). Accordingly, we conclude that the district court did not abuse its discretion in revoking probation and resentencing Colasuonno to a term of incarceration and supervised release on the substantive tax crime of conviction.

31

## C.   The Request To Modify the Written Judgment Is Not Ripe

Finally, Colasuonno asserts that, even if this court does not vacate the amended judgment of conviction, it must modify that judgment to delete a statement indicating that he was obliged to pay restitution while in prison. See Judgment at 6, No. 07-cr-555 (Apr. 6, 2011), ECF No. 33 (stating that "payment of criminal monetary penalties is due during the period of imprisonment").  Colasuonno contends that (1) this aspect of the written judgment conflicts with the oral sentence, which necessarily controls, see United States v. Ramirez, 344 F.3d 247, 255 (2d Cir. 2003); and (2) the district court, in any event, lacked authority to order Colasuonno to pay restitution while in jail because it could only order payment of restitution as a condition of supervised release, see generally United States v. Bok, 156 F.3d 157, 166–67 (2d Cir. 1998) (discussing imposition of restitution in context of supervised release).   Colasuonno represents that, while imprisoned, he made partial—but not full—monthly payments of restitution according to the schedule set by the court.

 Colasuonno did not object to the written judgment in the district court.  He explains that he could not do so because the amended judgment was entered after he had filed his notice of appeal.  We need not here decide whether this adequately excuses any default because we decline to consider Colasuonno's argument to modify the judgment at this time.

Specifically, Colasuonno's challenge to the written judgment fails to present a ripe case or controversy.  See Ross v. Bank of Am., N.A., 524 F.3d 217, 226 (2d Cir. 2008) ("The

32

requirement that a dispute must be ripe prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." (internal quotation marks omitted)); see also Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003) (requiring "a real or concrete dispute affecting cognizable current concerns of the parties" before federal court will intervene). Because Colasuonno's prison term is over and because he does not seek the return of any restitution payments he made while imprisoned, the modification he requests would neither abate a present injury nor compensate for a past one. See United States v. Quattrone, 402 F.3d 304, 308 (2d Cir. 2005) (characterizing claims as moot where intervening events "make[] it impossible for the court to grant any effectual relief whatever" (internal quotation marks omitted)). Further, insofar as Colasuonno maintains that modification is necessary to ensure that he is not prosecuted for contempt for paying less than the full amount due each month according to the schedule set by the district court, see 18 U.S.C. § 401, he posits an injury that may never materialize, see Simmonds v. INS, 326 F.3d at 357 (stating that ripeness requirement allows courts "to avoid becoming embroiled in adjudications that may later turn out to be unnecessary").

When and if the government attempts to prosecute Colasuonno for such putative underpayments, he remains free to argue that he was not obligated to pay restitution while incarcerated. At present, his application to amend the judgment must be dismissed as not ripe.

33

### III.  Conclusion

To summarize, we conclude as follows:

1.  Probation revocation proceedings are continuations of the criminal action wherein the probationary sentence was initially imposed and, as such, are exempted from the operation of the Bankruptcy Code's automatic stay by 11 U.S.C. § 362(b)(1).  No different conclusion obtains because the condition of probation at issue pertains to restitution and, thus, a defendant's bankruptcy filing does not—effectively or otherwise—relieve that defendant of a probation condition to pay restitution.

2.  The district court did not clearly err in finding that Colasuonno had failed to establish an advice-of-counsel defense to the charged violation of probation because Colasuonno withheld from counsel the fact most relevant to the operation of the automatic stay on his restitution obligation, specifically, that the obligation derived from a criminal conviction.

3.  Colasuonno's request to modify his written judgment to delete a statement obligating him to pay restitution while incarcerated is not ripe for adjudication.

The judgment revoking probation and resentencing Colasuonno is therefore AFFIRMED and the application to modify the written judgment is DISMISSED.