24-2483-cr
*United States v. Boone*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of October, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> DENNIS JACOBS,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                                          24-2483-cr

DERON BOONE,

> *Defendant-Appellant*.

---

FOR APPELLEE:                    JOSEPH H. ROSENBERG (Michael D. Maimin, Nathan Rehn, and William K. Stone, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:          THOMAS H. NOOTER, Freeman, Nooter & Ginsberg, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul G. Gardephe, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on September 16, 2024, is **AFFIRMED**.

Defendant-Appellant Deron Boone appeals from a judgment of conviction entered by the district court, following a jury trial at which Boone was found guilty of one count of possession of a firearm after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 2. On appeal, Boone challenges the denial, after a hearing, of his motion to suppress evidence seized during a search of his apartment, namely, the firearm that provided the basis for his conviction. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

Based upon the evidence adduced at the suppression hearing, on February 14, 2023, New York City Police Department ("NYPD") Officers Dwight Wanzer and Alonso Mora responded to a 911 call placed by Benjamin Fortune, reporting a shooting at an apartment in the Bronx, which he shared with Boone. Upon arriving, the officers initially spoke with Fortune at the entrance to the apartment, but shortly thereafter, Boone appeared in the doorway and also spoke with the officers. Officer Wanzer asked for permission to enter the apartment, to which Fortune agreed, and upon entering, the officers noticed shell casings on the floor and bullet holes on both sides of the door. According to the officers, Fortune, who stated that he was the leaseholder for the apartment, subsequently agreed to allow the officers to search the apartment and executed a form consenting to such a search. Fortune advised the officers that he had been drinking that evening but, according to Officer Wanzer, Fortune "seemed like he answered all of the questions very well"

2

and "seemed very coherent." App'x at 55. Officer Mora similarly testified that Fortune appeared to be able to understand and answer all the questions asked by the officers. After receiving Fortune's written consent, the officers searched Boone's separate bedroom in the apartment and returned to the living room around ten minutes later with a small black safe found in Boone's bedroom. Boone admitted that it was his safe but refused to open it. The officers subsequently returned with a search warrant for the safe and, upon opening it, found a firearm and ammunition inside. After it was determined that Boone's DNA was on the firearm, Boone was arrested and subsequently charged in an indictment with one count of possession of a firearm after a felony conviction.

Boone moved to suppress the evidence, and the district court denied that motion after an evidentiary hearing at which it considered, *inter alia*, the sworn testimony of Officers Wanzer and Mora, as well as Boone's testimony, along with physical evidence, including footage recorded on body cameras worn by the NYPD officers. *See generally United States v. Boone*, No. 23-cr-427 (PGG), 2024 WL 382060 (S.D.N.Y. Feb. 1, 2024). Following Boone's conviction after a jury trial, the district court sentenced him principally to 97 months' imprisonment, to be followed by three years' supervised release. On appeal, Boone challenges the district court's denial of his suppression motion.

"On an appeal challenging a district court's ruling on a motion to suppress evidence, we review its legal conclusions *de novo* and its findings of fact for clear error." *See United States v. Iverson*, 897 F.3d 450, 459 (2d Cir. 2018). Findings of fact are clearly erroneous "only when the record as a whole leaves [the reviewing court] with the definite and firm conviction that a mistake has been committed." *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (internal quotation marks and citation omitted). We also give special deference to factual findings that are

3

based on determinations of witness credibility. *See United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013).

Boone argues that, in denying his suppression motion, the district court applied the wrong legal standard to its consideration of Fortune's intoxication on the issue of whether he voluntarily consented to the officers' search of the apartment. In addition, Boone contends that the district court erred in finding that (1) Fortune voluntarily consented to the search notwithstanding his intoxication, and (2) the officers reasonably believed Fortune had the authority to consent to the search of Boone's room. We find Boone's arguments unpersuasive and address each in turn below.

## I. The Legal Standard

"It is well settled that a warrantless search does not violate the Fourth Amendment if the authorities have obtained the voluntary consent of a person authorized to grant such consent." *United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996) (internal quotation marks and citation omitted). Whether consent is voluntary is a question of fact to be determined from the totality of all the circumstances, and assessed under an objective standard, namely, whether "the officer had a reasonable basis for believing that there had been consent to the search." *United States v. Isiofia*, 370 F.3d 226, 231 (2d Cir. 2004) (citation omitted). In addition, the burden is on the government to prove by a preponderance of the evidence that consent was voluntary. *Id*. at 230.

To the extent Boone argues that the district court erred by applying the wrong legal standard in considering the impact of Fortune's intoxication on his ability to consent to the officers' search of the apartment, we disagree. As an initial matter, we reject any suggestion that there is a per se rule that intoxication necessarily vitiates the voluntariness of an individual's consent to search. Instead, intoxication is one factor in assessing voluntariness under the totality of the circumstances.

*See Isiofia*, 370 F.3d at 231 & n.1; *see also United States v. Vega*, No. 20-4135, 2021 WL 6116823, at *1, 3 (2d Cir. Dec. 27, 2021) (summary order) (explaining that there was "no clear error in the district court's conclusion that [the visitor] voluntarily consented to the officers' entry and search of the apartment," even though, "[a]s the district court recognized, [the visitor] was intoxicated on the night at issue" (internal quotation marks and citation omitted)).  Here, it is abundantly clear from the district court's decision that it utilized the proper legal standard in examining Fortune's intoxication.  *See Boone*, 2024 WL 382060, at *7 ("[I]ntoxication may be a factor which impacts the voluntariness of an individual's consent to search.  The fact that a person is under the influence of drugs or alcohol does not necessarily render consent involuntary, although intoxication may be considered in the evaluation of voluntariness." (internal quotation marks and citations omitted)).

Boone argues, in part, that we should "remand to the district court to review his findings applying a standard similar to that which would be applied to whether an intoxicated person can enter a guilty plea in federal court."  Appellant's Br. at 21.  However, there is no support in our precedent for utilizing the standard for guilty pleas in the Fourth Amendment context.  Indeed, we have made clear that the "standard of voluntariness designed to govern consensual searches and seizures" is entirely distinct from the standard for determining whether a guilty plea was knowing and voluntary.  *Rosado v. Civiletti*, 621 F.2d 1179, 1190 (2d Cir. 1980) (explaining that, in determining the voluntariness of international prisoners' consents to transfer to United States custody, courts should "turn for guidance to the line of cases construing the voluntariness of guilty pleas," rather than "adopt[ing the] standard of voluntariness designed to govern consensual searches and seizures within the United States").  In short, we conclude that the district court did not err in considering Fortune's intoxication, along with other factors under the "totality of the circumstances" standard, in analyzing whether Fortune voluntarily gave officers consent to search

5

the apartment. *Iverson*, 897 F.3d at 458 ("Determination of whether such an individual has so consented requires a fact-based inquiry that considers the 'totality of all the circumstances.'" (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973))).

## II. Voluntariness

Boone next argues that the district court erred in determining that Fortune voluntarily consented to the search because, according to Boone, Fortune was too intoxicated to do so. We disagree.

To be sure, as the district court recognized, there was evidence in the record that Fortune had some level of intoxication at the time he gave his consent. Indeed, Officer Mora testified that Fortune was intoxicated and smelled of alcohol at the time of the search. Nevertheless, after examining the totality of the circumstances, the district court determined that Fortune's consent was voluntary. There was sufficient evidence in the record to support that determination. For example, Officer Wanzer testified that, even though one of the first things Fortune said was that he had been drinking, Fortune "answered all of the questions very well" and seemed "coherent" throughout the night. App'x at 54–55. Furthermore, Officer Mora, who testified to recognizing Fortune's intoxication as soon as the officers arrived at the apartment, maintained that Fortune was "cooperative" and never "veer[ed] off in any sort of way" during the questioning. *Id*. at 76–77. In fact, the only moment in the record where Fortune had difficulty understanding and responding to the officers was when Officer Wanzer asked Fortune to write the time on the consent-to-search form in military time, a format which Fortune appeared to not "understand." *Id*. at 59–60.

Boone suggests that the district court's determination was erroneous because the district court failed to address other evidence in the record, based in part on Fortune's affirmation and Boone's testimony at the suppression hearing, that Fortune's level of intoxication was too great to

6

support a finding of voluntary consent. However, the district court carefully considered the evidence of Fortune's intoxication (including Boone's testimony on the subject) and thoroughly explained why the body camera footage supported its voluntariness determination:

> [W]hile Boone testified at the suppression hearing that when the police arrived, Fortune was "not there" mentally—"the lights [were] on, but nobody's home"—the body camera footage does not support Boone's account. The body camera footage shows that Fortune was coherent and lucid in speaking with the officers. He provides clear answers to the officers' questions about the shooting incident and his living arrangement with Boone. Fortune's speech is not slurred, and he walks normally when moving from room to room in the [a]partment, without stumbling or weaving. The camera footage shows Fortune, at various points, rummaging through a drawer, adjusting a curtain, and taking a soft drink out of the refrigerator; there is no lack of physical coordination.
>
> Similarly, when Officer Wanzer reads the consent to search form to Fortune in the kitchen, Fortune appears to understand what Wanzer is saying, and to read along from his own copy of the form. Fortune's actions and remarks are appropriate in context. Apart from not understanding Officer Wanzer's direction to use military time—a concept with which many are unfamiliar—Fortune has no difficulty in filling out the consent form. In sum, the video evidence corroborates Officer Wanzer and Officer Mora's testimony that Fortune appeared to be coherent, cooperative, and capable of understanding what was happening.
>
> Acknowledging the evidence that Fortune had been drinking prior to the officers' arrival at the [a]partment, the record does not demonstrate that he was too intoxicated to provide voluntary consent to a search of the [a]partment.

*Boone*, 2024 WL 382060, at *8–9 (internal citations omitted). On this record, we discern no clear error in the district court's factual findings based upon its consideration of the testimony and other evidence adduced at the hearing, including the video evidence from the officer's body camera. Moreover, in light of those factual findings, the district court did not err in determining that Fortune's consent to the search was voluntary.

### III.    Apparent Authority to Consent

Boone also asserts that the district court erred in finding that Fortune had apparent authority to consent to the search of Boone's bedroom. We are unpersuaded.

7

A warrantless search does not violate the Fourth Amendment if voluntary consent to the search is given by a third person "who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). In addition, authority to consent to a search may be either actual or apparent. *See United States v. McGee*, 564 F.3d 136, 139 (2d Cir. 2009). Actual authority requires that the third party "(1) has access to the area searched and (2) has either (a) common authority over the area, (b) a substantial interest in the area, or (c) permission to gain access to the area." *Moore v. Andreno*, 505 F.3d 203, 208–09 (2d Cir. 2007). Apparent authority, on the other hand, exists when the third party "reasonably appear[s] to the police to possess authority to consent to the search." *McGee*, 564 F.3d at 139. Courts assess apparent authority by utilizing an objective standard, asking whether "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (internal quotation marks and citation omitted).

Here, the district court did not err in determining that "Fortune reasonably appear[ed] to the police to possess authority to consent to the search of the entire [a]partment, including Boone's bedroom."[1] *Boone*, 2024 WL 382060, at *13 (internal quotation marks and citation omitted). In addition, the district court found that "there [was] no credible evidence that Boone objected to Fortune providing consent to search or to the search itself prior to the discovery of the safe in

---

[1] The district court first concluded that Fortune did not have actual authority to consent to a search of Boone's bedroom. Although the evidence supported a determination that Fortune was the leaseholder of the apartment, the district court correctly focused not on "the mere property interest a third party has in the property," but rather on the "mutual use of the property." *Matlock*, 415 U.S. at 171 n.7. In particular, the district court noted the uncontroverted evidence that neither Boone nor Fortune kept belongings in, or had permission to enter, or had any expectation of control over, the other's bedroom. Accordingly, the district court concluded that it "[could not] find that Fortune had actual authority to consent to a search of Boone's bedroom" because "[t]he record does not establish that Fortune had permission to enter Boone's bedroom, or that he had either common authority over or had a substantial interest in Boone's bedroom." *Boone*, 2024 WL 382060, at *12 (internal quotation marks and citation omitted).

Boone's bedroom." *Id.* Boone challenges that factual determination, pointing to his testimony in which he stated that he objected to the search of the apartment both before, and immediately after, Fortune signed the consent-to-search form. Moreover, Boone argues, *inter alia*, that "[i]t is very improbable that [he] would have sat silently after learning of the signing of the consent form . . . if he knew that the search would turn up the weapon in the safe in his room." Appellant's Br. at 25. However, we have emphasized that, "[w]hen . . . credibility determinations are at issue, we give particularly strong deference to a district court finding." *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008). Here, after explicitly considering Boone's testimony on this issue, the district court "rejected [it] as not credible, given the implausibilities, inconsistencies, and contradictions in his varied accounts" and, instead, "accept[ed] the officers' testimony that Boone remained silent even after he became aware that Fortune had signed a consent to search form, and even after the search of the [a]partment began." *Boone*, 2024 WL 382060, at *13. We conclude that there is nothing in the record to suggest that the district court clearly erred in crediting the officers' testimony over Boone's testimony, including on the issue of whether he raised any objection to the search before the safe was found. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (explaining that when a district court's factual finding "is based on [a] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error"). Moreover, the officers could consider Boone's silence in context: the occupants called the police and thereby invited police investigation of the premises.

In sum, there is no basis to disturb the district court's determination, after weighing the testimony and other evidence adduced at the hearing, that the officers reasonably believed that Fortune had authority to consent to the search of the apartment, including Boone's bedroom.

Therefore, the district court properly denied Boone's motion to suppress the evidence seized during the search.

*     *     *

We have considered Boone's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court