20-3437
Villiers v. Decker

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2021

(Argued: October 28, 2021            Decided: April 25, 2022)

Docket No. 20-3437

_____

ROLANDO OSHANE VILLIERS,

*Petitioner-Appellee,*

HENRY FERREYRA, JEFFERSON DENIZARD, ANGEL PERDOMO PERDOMO, REMIGIO TAPIA VILCHIS,

*Petitioners,*

- v. -

THOMAS DECKER, in his official capacity as Director of the New York Field Office of U.S. Immigrations & Customs Enforcement,

*Respondent-Appellant,*

ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of Homeland Security,[*]

*Respondent.*

_____

Before: KEARSE, LOHIER, and BIANCO, *Circuit Judges*.

In this habeas corpus proceeding under 28 U.S.C. § 2241 in which the United States District Court for the Southern District of New York, Analisa Torres, *Judge*, in May 2020 during the height of the COVID-19 public health crisis, issued a preliminary injunction principally requiring the United States Immigration & Customs Enforcement ("ICE") to release petitioner Rolando Oshane Villiers and three other petitioners from immigration detention, the government appeals from an August 2020 order denying its motion to vacate or modify so much of the May 2020 injunction as forbade ICE to resume detention of Villiers without court permission. The government sought permission to re-detain Villiers on the ground that since his release he has been arrested and charged with crimes, thereby violating the court-imposed condition that he not commit a crime while on release. The district court denied the motion, ruling, *inter alia*, that the release condition is not violated unless

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary Alejandro Mayorkas is automatically substituted for former Acting Secretary Peter T. Gaynor as a respondent in this case.

and until, on the new charges, Villiers is actually convicted. The government principally challenges that ruling on appeal. We conclude that the court erred in ruling that a release condition prohibiting commission of a crime is not violated unless there has been a criminal conviction. We thus vacate the August 2020 order and remand for further proceedings.

Vacated and remanded.

BROOKE MENSCHEL, Brooklyn, New York (S. Lucas Marquez, Brooklyn Defender Services, Brooklyn, New York; Eamon P. Joyce, Michael McGuinnes, Sidley Austin, New York, New York, on the brief), *for Petitioner-Appellee*.

BENJAMIN H. TORRANCE, Assistant United States Attorney, New York, New York (Audrey Strauss, United States Attorney for the Southern District of New York, Talia Kraemer, Assistant United States Attorney, New York, New York, on the brief), *for Respondent-Appellant*.

KEARSE, *Circuit Judge*:

In this habeas corpus proceeding under 28 U.S.C. § 2241 in which the United States District Court for the Southern District of New York, Analisa Torres, *Judge*, in May 2020 during the height of the COVID-19 public health crisis, issued a

3

preliminary injunction principally requiring Respondent Thomas Decker, Director of the New York Office of the United States Immigration & Customs Enforcement (collectively "ICE") to release petitioner Rolando Oshane Villiers and three other petitioners from immigration detention, the government appeals from an August 2020 order denying its motion to modify or vacate so much of the May 2020 injunction as prohibits ICE from resuming detention of Villiers without court permission. The government sought permission for ICE to re-detain Villiers on the ground that during his release pursuant to the preliminary injunction he has been arrested and charged with several crimes, thereby violating the court-imposed condition that he not commit a crime while on release. The court denied the motion, ruling, *inter alia*, that that release condition was not violated unless and until, on the new charges, Villiers was actually convicted. The government principally challenges that ruling on appeal. For the reasons that follow, we conclude that the district court erred in ruling that a release condition prohibiting commission of a crime is not violated unless there has been a criminal conviction. We thus vacate the August 2020 order and remand for further proceedings.

4

# I. BACKGROUND

Villiers, a native and citizen of Jamaica, was admitted to the United States in November 2017 on a six-month nonimmigrant visa that authorized him to be in the United States until May 27, 2018. He did not depart after that date and has remained in the United States without authorization. In the two years after his arrival, Villiers was arrested by New York City Police Department ("NYPD") officers three times. In November 2019, pursuant to 8 U.S.C. § 1227(a)(1)(B), ICE initiated removal proceedings against him for remaining in the United State longer than permitted by United States law, and detained him pending the outcome of the proceedings. Villiers conceded removability and applied for relief from removal.

A. *The Habeas Petition and the Order for Villiers's Release*

Villiers was initially detained by ICE at the Essex County Correctional Facility in Newark, New Jersey ("Essex facility"), and was subsequently transferred to the Bergen County Jail in Hackensack, New Jersey ("Bergen facility"). In April 2020, as COVID-19 developed into a global pandemic and spread rapidly in prisons and jails, Villiers, along with four others who were being detained by ICE at the Essex

5

or Bergen facilities, or at the Orange County Jail in Goshen, New York ("Orange facility"), filed a petition for release pursuant to 28 U.S.C. § 2241. They asserted that conditions at those facilities posed such unreasonable risks to their health as to violate their rights to substantive due process.

The petition alleged, *inter alia*, that staff and inmates at the Essex, Bergen, and Orange facilities had tested positive for the COVID-19 virus ("COVID"); that the five petitioners, including Villiers, had medical conditions that placed them at high risk of contracting COVID and at high risk of severe complications or death if they did contract COVID; and that ICE was unprepared and unable to protect the health of detainees in its custody. Two days after the petition was filed, ICE agreed to release one petitioner, Remigio Tapia Vilchis. The remaining four (hereinafter the "Petitioners") moved for a temporary restraining order ("TRO") and a preliminary injunction, seeking principally (1) their release from detention during their respective immigration proceedings, and (2) an order prohibiting ICE from resuming their detention during the pendency of those immigration proceedings.

In response to Petitioners' request for a TRO, the government submitted, *inter alia*, the declaration of an ICE Deportation Officer recounting the circumstances of ICE's arrest and detention of Villiers, and the pending removal proceeding against

6

him (*see* Declaration of Dare Aniyikaiye submitted April 24, 2020 ("Deportation Officer Decl." or "Declaration"), ¶¶ 2-5, 10-16), and describing a total of 19 charges against Villiers from his three arrests by NYPD in August and October 2018 (*id.* ¶¶ 6-9). All but one of the final dispositions of those charges were unknown to the Deportation Officer. (*See id.* ¶¶ 7-9.) The one known disposition was that in November 2019, "Villiers pled guilty in the Kings County Supreme Court to one count of Assault in the Second Degree with Intent to Cause Physical Injury with Weapon/Instrument in violation of NYPL section 120.05(2)," for which he was "sentenced to 364 days of imprisonment and an Order of Protection was entered against him." (*Id.* ¶ 7.)

The Declaration stated that in his removal proceeding, Villiers conceded the charge of removability and applied for relief from removal, and that his immigration case remains pending. (*See id.* ¶¶ 12-16.) The Declaration said that, with regard to the present habeas corpus petition, ICE declined to exercise its discretion to release Villiers from detention, having considered all of the circumstances, including "whether [he] could pose a danger to society if released." (*Id.* ¶ 19.)

Based on the parties' submissions and a telephonic hearing, the district court entered a TRO that (1) ordered ICE and the Essex, Bergen, and Orange facilities

7

to release Petitioners, on conditions to be imposed by the court, and (2) restrained ICE from rearresting them for immigration detention without court permission. *See* District Court Order dated April 27, 2020 ("2020 TRO"), at 28. The court found that Petitioners had made a sufficient showing that the conditions of confinement at their respective detention facilities posed an unreasonable risk of serious damage to their future health; that they were likely to succeed on the merits of their substantive due process claims that ICE knew or should have known that their medical issues placed them at a higher risk of severe illness or death from COVID-19; and that public health and safety would be best served by rapidly decreasing the number of persons confined in unsafe conditions. *See* 2020 TRO at 25-27. The court also stated that even if Petitioners had not shown a likelihood of success on the merits of their habeas due process claims, those claims were sufficiently substantial--and the circumstances sufficiently extraordinary--that the court would have exercised its "'inherent authority'" to "release them on bail pending final resolution of their habeas claims." *Id*. at 27 (quoting *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001)).

The court ordered ICE to show cause why the TRO should not become a preliminary injunction. *See* 2020 TRO at 29. Following additional proceedings, the court converted the TRO to a preliminary injunction. *See* District Court Order dated

8

May 22, 2020 ("Preliminary Injunction"). The court reiterated that "even if Petitioners had not met the requirements for a TRO, the Court would release them on bail . . . ." *Id*. at 27.

To the extent material to this appeal, the district court's post-TRO order granting Villiers release from the Bergen facility imposed on him several conditions. Among them, it required him to wear a GPS ankle bracelet allowing electronic monitoring by ICE, and it ordered that while on release he "shall not commit a federal, state, or local crime." District Court Order dated April 27, 2020 ("Villiers Release Order"), at 1. In subsequently granting the Preliminary Injunction, the court ordered that the Petitioners "remain released on the conditions set by the Court" in their respective release orders. Preliminary Injunction at 2; *id*. at 28 ("Petitioners shall remain released, subject to the conditions already set by the Court"). The court rejected the government's request that ICE not be restrained from a re-detaining petitioner in the event that he commits another crime, stating that "[p]erhaps those occurrences would warrant an application to the Court for a modification of [the] order," but that the court would not otherwise "pass on the hypothetical circumstances that might allow redetention." *Id*. at 28 n.13.

B. *ICE's Request for Permission to Re-Detain Villiers*

The May 2020 Preliminary Injunction, like the TRO, provided that ICE "is RESTRAINED from arresting Petitioners for civil immigration detention purposes unless [it] first obtains the Court's permission." Preliminary Injunction at 2, 28. On July 28, 2020, the government informed the district court that Villiers had been arrested by NYPD on July 27, 2020, in connection with what appeared to be a July 19 domestic violence incident. (*See* Letter from Assistant United States Attorney ("AUSA") Michael J. Byars to Judge Torres dated July 28, 2020 ("Government Letter").) The government stated that Villiers had been charged with second-degree robbery, assault on a police officer, resisting arrest, and second-degree obstruction of governmental administration. (*See id*. at 1-2.)

Submitting and quoting copies of the July 2020 NYPD complaints and arrest reports, the government described the details as follows:

> [O]n Sunday, July 19, 2020, Villiers was at his girlfriend's residence when he took her "phone from her hand while striking her with a closed fist due to [her] telling [Villiers] that he could not stay there. [Villiers] then choked [her] when she attempted to retrieve [her] phone from [Villiers]." The cell phone does not appear to have been recovered. As a result, it appears that Villiers has been charged with one count of second-degree robbery.

On Monday, July 27, 2020, the NYPD arrested Villiers in relation to the above incident. According to the documents, Villiers resisted arrest. Specifically, "[Villiers] did attempt to take a Taser from [one of the officers'] hand, in which during the ensuing struggle caused the Taser to fire and hit another [officer] in his left foot. [Villiers] also bit [an officer] in the left elbow and punched him in the head," causing a "deep laceration to his left elbow, swelling, redness to [the] left knee."

(Government Letter at 1-2 (quoting and citing NYPD Complaint No. 2020-067-005592, and NYPD Arrest Report Nos. K20623349H and K20623359Y (internal citations omitted).)

The government "request[ed] that the Court either modify or vacate the portion of its May 22 Order enjoining ICE from arresting and re-detaining petitioner Rolando Oshane Villiers ('Villiers') due to his non-compliance with the Court's conditions" (Government Letter at 1), "request[ing] that the Court permit ICE to re-detain Villiers pending resolution of his removal proceedings" (*id*. at 2). The letter stated that if resumption of Villiers's immigration detention were permitted, ICE planned to place him in the Orange facility rather than the Bergen facility.

Villiers opposed the government's motion. His counsel, while acknowledging the "serious nature of the allegations," argued that the charges had not been accepted by a grand jury, much less proven at a trial; that Villiers "remain[ed]

entitled to a presumption of innocence"; and that "[a]bsent a conviction, Mr. Villiers has not commit[ed] a . . . crime in violation of the Court's order of release." (Letter from Brooklyn Defender Services Attorney Sonia Marquez to Judge Torres dated July 30, 2020, at 2 (internal quotation marks omitted).) Counsel added that Villiers had been granted bail; and she argued that the combination of "the ability of the district attorney to seek a bail increase or remand upon a change in circumstances--and this Court's conditions of release that are still in place, should . . . be adequate in the civil immigration context to mitigate the risks of flight or danger." (*Id*. (footnotes omitted).)

The government replied to Villiers's letter principally by arguing that the court's conditions of release "do[] not require that Villiers be convicted of a crime before a violation occurs." (Letter from AUSA Brandon M. Waterman to Judge Torres dated August 6, 2020 ("Government Reply Letter"), at 2; *see, e.g.*, *id*. n.2 ("The use of the word 'commit' instead of 'convicted' is important. Commit means 'To perpetrate (a crime),' whereas convict means 'To prove or officially announce (a criminal defendant) to be guilty of a crime after proceedings in a law court; specif., to find (a person) guilty of a criminal offense upon a criminal trial, a plea of guilty, or a plea of nolo contendere (no contest).' Black's Law Dictionary 11th ed. 2019.").)

The parties also debated the COVID-related health conditions at ICE detention facilities, citing August 2020 facts and statistics. However, as both sides have recognized on this appeal that evidence on the health and safety issues would by now need to be updated, we omit description of their 2020 presentations, as well as the district court's findings as to the then-existing circumstances.

C. *The Decision of the District Court*

In an order dated August 7, 2020 ("August 2020 Order"), the district court denied the government's motion. Acknowledging that Villiers had been "released subject to specific conditions, including the requirement that he not 'commit a federal, state, or local crime,'" August 2020 Order at 2 (quoting Villiers Release Order at 1), and accepting the facts that while on release Villiers has been arrested, arraigned, and released on bail, the court declined to give ICE permission to re-detain him, stating principally as follows:

> Respondent has not presented evidence that Petitioner has violated the conditions of release set by the Court. That Petitioner was arrested is not proof that Petitioner has "committed" a crime. Nor would it be appropriate for the Court to predetermine that issue--the proper venue for determining whether [Villiers] has broken the law is the New York state court where his charges are

13

> currently pending. The presumption of innocence remains with
> a Defendant unless and until he is found guilty of a crime.

August 2020 Order at 2.

This appeal followed.

## II. DISCUSSION

On appeal, the government contends principally that the district court erred in ruling that a release condition prohibiting commission of a crime is not violated unless there has been a criminal conviction. Villiers, retreating from the position taken in the district court, has conceded in his brief and oral argument on appeal that the court may properly revoke his release for violation of the do-not-commit-a-crime condition and "detain [him] because he committed a crime even though he hasn't been convicted of a crime" (Oral Argument Recording at 9:52-9:57; *see* Villiers brief on appeal at 37-40). Instead, Villiers now argues that the district court did not rule that a conviction was a prerequisite, but instead merely evaluated the police reports and arrest records and "was simply unpersuaded by the evidence" (Villiers brief on appeal at 39) that Villiers committed a crime.

For the reasons that follow, we conclude that the court based its decision not on an assessment of the evidence as to Villiers's conduct but rather on its view as a matter of law that a release condition prohibiting the commission of a crime is not violated unless and until there is a conviction. Reviewing that legal ruling *de novo*, we conclude that it was erroneous. Accordingly, we vacate and remand for further proceedings.

A. *The Terms of the Preliminary Injunction*

We review a district court's denial of a motion to modify a preliminary injunction for abuse of discretion. *Weight Watchers International, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Group, Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (internal quotation marks omitted).

In the present case, it is possible to view the preliminary injunction as not technically requiring modification, given that it prohibits ICE from re-detaining a

15

petitioner without court permission, and the government did not request elimination of the permission condition but rather requested that such permission be granted with regard to Villiers. However, we view the government as having properly moved to vacate or modify the injunction to the extent it applied to Villiers, since ICE sought permission to re-detain Villiers, which, if granted, would plainly have altered the current status quo.

The principal issue on appeal concerns the district court's conclusion that as a matter of law it could not find that Villiers had violated the do-not-commit-a-crime condition of the preliminary injunction order. We turn therefore to the merits of the government's challenge that this was an error of law warranting vacatur of the denial of its motion to vacate or modify so much of the injunction as prohibited it from re-detaining Villiers.

B. *Conditional Release of Individuals Detained*

Most of the reported decisions dealing with requests for the revocation of bail or of other forms of release from detention have concerned individuals who were detained because they had been convicted of crimes. Villiers, however, was detained by the United States for civil immigration proceedings because he violated

federal law, albeit not federal criminal law. His detention or release on bond would normally be controlled by the United States Attorney General, whose exercise of discretion would not be judicially reviewable. *See* 8 U.S.C. §§ 1226(a) and (e). In this case, however, unrelated to the merits of his immigration status, Villiers raised--to the satisfaction of the district court, and not appealed by the government--a substantial constitutional claim that the conditions of his detention at the Bergen facility in the Spring of 2020, at the height of the COVID pandemic, posed an unreasonable risk to his health; and in this habeas proceeding he has been granted the equivalent of bail. The present case thus comes to us via a different route than those arising through the criminal justice system. However, as to the merits of a claim that conditions of release have been violated, the government's motion implicates the same principal concerns that shape decisions to grant or revoke the release of individuals who were or had been in custody because they were accused or convicted of crime. We thus look to those decisions for guidance in considering the district court's ruling in this case.

Individuals detained by the government, whether after an established violation of federal law or in anticipation of the resolution of charges of such violations, are usually sentenced to, or eligible for, a period of release from such detention on conditions established by statute or court order. *See, e.g., Johnson v.*

17

*United States*, 529 U.S. 694, 696-97 (2000) (supervised release following service of prison term imposed for conviction of federal crime, *see* 18 U.S.C. § 3583); *United States v. Edwards*, 834 F.3d 180, 183 (2d Cir. 2016) ("*Edwards*") (same); *United States v. Chatelain*, 360 F.3d 114, 115-16 (2d Cir. 2004) ("*Chatelain*") (same); *United States v. Colasuonno*, 697 F.3d 164, 169 (2d Cir. 2012) ("*Colasuonno*") (release on probation following service of prison term imposed for conviction of federal crime, *see* 18 U.S.C. § 3561); *United States v. Nagelberg*, 413 F.2d 708, 709-10 (2d Cir. 1969) ("*Nagelberg*") (release on probation following suspension of an imposed prison term for conviction of federal crime, *see* 18 U.S.C. § 3651 (1964), *repealed by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, Tit. II, §§ 212(a)(1) and (2), 98 Stat. 1837, 1987), *cert. denied*, 396 U.S. 1010 (1970); *see also United States v. Davis*, 845 F.2d 412, 414-15 (2d Cir. 1988) ("*Davis*") (release on bail prior to trial, *see* 18 U.S.C. §§ 3142 and 3148).

In all such circumstances, conditions are imposed that highlight two primary goals: (a) to assure that the individual will appear at the required venue at the required time (*e.g.*, for trial or for supervision by a monitoring officer), and (b) not to endanger the safety of any other person or the public. As to the latter for example, § 3583, titled "Conditions of supervised release" provides, *inter alia*, that "[t]he *court shall order*, as an *explicit condition* of supervised release, *that the defendant not commit*

18

*another Federal, State, or local crime during the term of supervision*." 18 U.S.C. § 3583(d) (emphases added). Similarly with respect to the former federal system of parole, which was abolished when the United States Sentencing Guidelines ("Guidelines") became effective, the parole commission was instructed that "*[i]n every case*, the Commission *shall impose as a condition of parole that the parolee not commit another Federal, State, or local crime*." 18 U.S.C. § 4209(a) (1982) (emphases added), *repealed by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, Tit. II, § 218(a)(5), 98 Stat 1837, 2027. And with respect to a defendant detained pending trial, 18 U.S.C. § 3142 contains the same command. It provides, *inter alia*, that if a judicial officer determines that the defendant will be "reasonably assure[d]"--either by means of fiscal and/or physical security, *see id*. § 3142(c), or without a need for such security, *see id*. § 3142(b)--to be present "as required," and does not find that the defendant's release will "endanger the safety of any other person or the community," the judicial officer "shall" order the defendant's pretrial release "subject to the condition that the person *not commit a Federal, State, or local crime during the period of release*," *id*. §§ 3142(b) and (c) (emphasis added).

With respect to all of these grants of release, the condition that the individual not commit a crime while on release is a "mandatory" condition of his

19

release. *E.g., Johnson*, 529 U.S. at 697; *Edwards*, 834 F.3d at 183; *United States v. Reyes*, 283 F.3d 446, 459 (2d Cir. 2002) (federal parole).

C. *Proceedings Following Alleged Violations of Release Conditions*

Proceedings to revoke an individual's release on probation, parole, or supervised release are not stages in a criminal prosecution; and they are governed by standards less stringent than those governing criminal trials. *See, e.g., Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (revocation of state-law probation); *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (revocation of state-law parole); *Johnson*, 529 U.S. at 700 (revocation of supervised release); *United States v. Jones*, 299 F.3d 103, 109 (2d Cir. 2002) ("*Jones*") (noting that the constitutional guarantees governing revocation of parole or probation are identical to those applicable to revocation of supervised release). While an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing, due process does not entitle him to the full range of rights he would have in a criminal prosecution. *See, e.g., Morrissey*, 408 U.S. at 487-89. In a revocation proceeding, he does not have, for example, a constitutional right to

20

counsel, *see, e.g., Gagnon*, 411 U.S. at 790, or to trial by jury, *see, e.g., Johnson*, 529 U.S. at 700.

Nor does an individual in a revocation proceeding have the right to have that proceeding delayed until disposition of the criminal charges against him. *See, e.g., Jones*, 299 F.3d at 111; *United States v. Alvarez*, 878 F.3d 640, 641 (8th Cir. 2017). Indeed, the Supreme Court suggests that revocation proceedings should be conducted expeditiously: "[D]ue process would seem to require that some minimal inquiry"--"in the nature of a preliminary hearing to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions"--should be conducted "as promptly as convenient after arrest while information is fresh and sources are available," *Morrissey*, 408 U.S. at 485 (internal quotation marks omitted); and a final hearing for a determination of more than probable cause should be held "within a reasonable time after the parolee is taken into custody," *id*. at 488 (noting that "[a] lapse of two months . . . would not appear to be unreasonable").

Finally, although "violation[s] of the conditions of supervised release . . . . often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a

jury beyond a reasonable doubt," *Johnson*, 529 U.S. at 700, in part because, even as to violative acts that "are criminal in their own right," revocation of release is not "punishment for" those new offenses, *id*. Instead, the penalty imposed for violating a condition of release is generally viewed as "relat[ing] to the original offense." *Id*. at 701; *id*. at 700 ("most courts" treat "sanctions for violating the conditions of supervised release a[s] part of the original sentence"). And as recommended by the federal Guidelines, this Court has generally viewed the revocation of supervised release as a sanction for the defendant's abuse of the court's trust in his agreeing to abide by the imposed conditions in order to be granted release instead of remaining incarcerated. *See, e.g., Edwards*, 834 F.3d at 194-95; *United States v. Aspinall*, 389 F.3d 332, 350 (2d Cir. 2004) ("*Aspinall*"); Guidelines ch. 7, pt. A intro. cmt. 3(b) (Policy Statement recommending that upon finding that a defendant "fail[ed] to follow the court-imposed conditions of probation or supervised release," the court should take into account the seriousness of the defendant's noncompliance and criminal history to a limited degree, and "should sanction primarily the defendant's breach of trust").

This approach is consistent with our traditional view of the conditions of probation and the appropriate judicial responses to violations of those conditions. A defendant's "acceptance of probation when execution of sentence has been

22

suspended constitutes an acceptance of the[ probation] conditions," one of those conditions being "that the probationer 'shall not violate any State or Federal Penal Law,'" *United States v. Markovich*, 348 F.2d 238, 239 (2d Cir. 1965); and the "act of grace extended to one convicted of a crime through a suspension of the execution of the sentence imposed after that conviction can be withdrawn in the discretion of the sentencing court when the court is satisfied that the recipient of its grace is unworthy of it," *id*. at 241. *See also Colasuonno*, 697 F.3d at 178 (probation revocation was "to address the breach of trust placed in Colasuonno when the court initially decided to sentence him to a term of probation rather than incarceration"); *United States v. Brown*, 899 F.2d 189, 192 (2d Cir. 1990) ("*Brown*") (revocation of release was a sanction for probationer who "abused the opportunity granted him not to be incarcerated" (internal quotation marks omitted)); *Nagelberg*, 413 F.3d at 709 (same).

As indicated above, given that a revocation proceeding for violation of the do-not-commit-a-crime condition of release is not part of a criminal prosecution for that crime, the question of whether the individual in fact committed the alleged criminal conduct need not, in the revocation proceeding, be decided beyond a reasonable doubt. Section 3583, which authorizes revocation of supervised release if the court finds that the defendant violated a release condition, *see id*. § 3583(e),

23

provides explicitly that such a finding is to be made "by a preponderance of the evidence," *id*. § 3583(e)(3). Thus,

> [t]o revoke supervised release and impose a term of imprisonment, a district court must find by a preponderance of the evidence that the defendant violated a condition of his supervision. *See* 18 U.S.C. § 3583(e)(3). The preponderance standard requires proof that the defendant's violation of supervision was "more likely than not." *United States v. Hertular*, 562 F.3d 433, 447 (2d Cir. 2009); *see United States v. Glenn*, 744 F.3d 845, 848 (2d Cir. 2014) (recognizing that standard of proof applicable to revocation proceedings is lower than that required to establish guilt at trial).

*Edwards*, 834 F.3d at 199. *See*, *e.g.*, *Johnson*, 529 U.S. at 700 (while "violations [of the conditions of supervised release] often lead to reimprisonment, the *violative conduct* . . . need only be found by a judge *under a preponderance of the evidence standard*" (emphases added)); *United States v. Carlton*, 442 F.3d 802, 811 (2d Cir. 2006) ("accusations proved by a preponderance of evidence do not violate the Fifth or Sixth Amendments in the context of [revocation of] supervised release"); *United States v. Ojudun*, 915 F.3d 875, 888 (2d Cir. 2019) (after finding an evidentiary error, remanding for a new revocation hearing for the court to "determine whether the [violation of supervised release] charges" were "established by a preponderance of the evidence").

24

With respect to revocation of forms of release other than supervised release, even lower standards of proof may be permissible. As to probation, *see* 18 U.S.C. §§ 3563 and 3565, there is no provision, such as § 3583(e)(3) with respect to supervised release, that conduct in violation of the probation condition is to be found by a preponderance of the evidence; and some opinions have suggested that the standard may be lower. Thus, in *Colasuonno*, we noted that

> a district court need only be "*reasonably satisfied*" that a probationer has failed to comply with the conditions of probation to revoke sentence. *United States v. Lettieri*, 910 F.2d 1067, 1068 (2d Cir.1990); *see also United States v. Hooker*, 993 F.2d 898, 900 (D.C.Cir.1993) (*suggesting "reasonably satisfied" standard may require less than preponderance of evidence*).

*Colasuonno*, 697 F.3d at 181 (emphases ours). *See also Brown*, 899 F.2d at 192 ("*revocation requires only proof to satisfy the court* that the probationer has abused the opportunity granted him not to be incarcerated" (internal quotation marks omitted (emphasis ours))); *Nagelberg*, 413 F.3d at 709 ("[o]n a hearing to revoke probation, *all that is required is that the court be satisfied* that [the probationer] had abused the opportunity granted him not to be incarcerated" (internal quotation marks omitted (emphasis ours))).

And with respect to pretrial bail under 18 U.S.C. § 3148(b), revocation expressly provides for a lower standard:

> In relevant part, § 3148(b) provides that a "judicial officer *shall enter an order of revocation and detention if*, after a hearing, the judicial officer--(1) finds that *there is*--(A) *probable cause to believe that the person has committed a Federal, State, or local crime while on release. . . . If there is probable cause* to believe that, while on release, the person committed a Federal, State, or local felony, *a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community"* . . . .

*Davis*, 845 F.2d at 414 (emphases ours) (original emphases omitted).

In sum, when considering a motion for revocation of release from detention, the court should not await resolution of the charges against the individual in the criminal proceeding but should proceed expeditiously to determine whether the individual engaged in conduct prohibited (or failed to perform acts required) by the release condition; and the revocation court need not make its factual findings by any more stringent standard than a preponderance of the evidence.

Finally, the do-not-commit-a-crime condition common to the release regimes discussed above is a mandatory condition designed to dissuade the released individual from endangering the safety of another person or the community. It is the commission of crimes that cause injury. An eventual conviction for the crime, while

26

providing some solace, does not undo the injury, and conviction is thus not the impetus for that mandatory condition of release. It is significant--and not surprising--that the district court in its August 2020 Order did not cite any authority for its view that a conviction is a necessary prerequisite for the revocation court to find that the individual who committed a crime while on release violated that condition of release. Villiers in his arguments on appeal likewise cites no such authority. Nor have we found any.

To the contrary, in *Chatelain* we not only noted that findings in revocation proceedings are to be made under the preponderance standard, we also expressly ruled that the defendant's violation of the do-not-commit-a-crime condition of his release warranted revocation of his supervised release without his having been convicted of the alleged crimes:

> The pertinent supervised-release condition provided that Chatelain "shall not *commit* another federal, state, or local crime." (Judgment of Conviction October 18, 1999, at 3 (emphasis added).) . . . *[T]he applicability of this condition is not dependent on the defendant's being convicted, so long as the court in the revocation proceeding finds that the defendant "committed" such a crime . . . .* a finding [that] . . . need only be made *"by a preponderance of the evidence"* . . . .

*Chatelain*, 360 F.3d at 124 (quoting 18 U.S.C. § 3583(e)(3) (second and third emphases ours)).

D. *The District Court's Requirement of a Conviction*

As set out in Part I.C. above (and repeated here for convenience) the district court denied the government's request for permission to re-detain Villiers, ruling--notwithstanding the NYPD complaints and records of Villiers's arrest in July 2020 submitted by the government--that the government

> has not presented evidence that [Villiers] has violated the conditions of release set by the Court. That Petitioner was arrested is not proof that Petitioner has "committed" a crime. Nor would it be appropriate for the Court to predetermine that issue--the proper venue for determining whether Respondent [*sic*] has broken the law is the New York state court where his charges are currently pending. The presumption of innocence remains with a Defendant unless and until he is found guilty of a crime.

August 2020 Order at 2. This was the court's entire discussion as to whether Villiers's conduct violated a condition of his release. We thus see no merit in Villiers's contention that the district court "was simply unpersuaded by the evidence" (Villiers brief on appeal at 39), for nothing in the August 2020 Order suggests that the court made any assessment of the evidence.

28

Instead, when the court stated (A) that it would not "be appropriate for the [District] Court to predetermine th[e] issue" of whether Villiers "committed a crime," (B) that a decision by the district court on revocation would deprive Villiers of his "presumption of innocence," and (C) that the court could not properly find that Villiers had violated the condition that he not "commit[]" a crime "unless and until he is found guilty of a crime," the court plainly ruled as a matter of law that a conviction was a necessary prerequisite for a finding that Villiers violated his do-not-commit-a-crime condition of release. We have several difficulties with this ruling.

The court's principal error is found in its statement that, if it were to decide whether Villiers had "committed" a crime, its decision would "predetermine th[e] issue" that is to be decided in Villiers's criminal proceeding: That rationale assumes that the issue in the two proceedings is the same. But while both proceedings concern the same conduct, the issues are not the same because the standards of proof are different. As discussed in Part II.C. above, the issue for the revocation court is whether the individual more likely than not engaged in conduct that was criminal. The issue in the criminal proceeding is whether he engaged in that conduct beyond a reasonable doubt. A finding by the district court that he more likely than not committed the acts alleged does not answer the question of whether

29

he did so beyond a reasonable doubt. Thus, the district court's view that its own revocation determination would "predetermine" Villiers's guilt was error.

Relatedly, the district court assumed that an unfavorable revocation decision prior to a trial in the criminal case would deprive Villiers of the presumption of innocence. But that assumption too founders principally on the difference between the applicable standards of proof. A person is presumed to be innocent until, after a fair trial, he has been found guilty beyond a reasonable doubt. *See, e.g.*, *Herrera v. Collins*, 506 U.S. 390, 398-99 (1993); *Ross v. Moffitt*, 417 U.S. 600, 610 (1974).

In considering the revocation motion, the district court was of course correct in stating that the mere fact that Villiers was arrested did not prove that he had committed the crimes charged. Yet, given that the existence of probable cause to believe he committed crimes was a constitutional prerequisite for his arrests, the arrest records provide an indication that the government's charge that Villiers violated the do-not-commit-a-crime condition--whether or not eventually proven to the district court's satisfaction--was not baseless. Villiers is entitled, if he requests, to an evidentiary hearing and an opportunity to be heard on the charge that his acts violated the that condition. As to the conduct of such a hearing, it is noteworthy that "[t]he Federal Rules of Evidence, . . . other than those governing privileges, do not

30

apply to proceedings 'revoking probation,' Fed.R.Evid. 1101(d)(3))," *Aspinall*, 389 F.3d at 344, and that the court for good cause may limit the right of confrontation, *see id.*; *see also Morrissey*, 408 U.S. at 489 (as "there is no thought to equate [a revocation hearing] to a criminal prosecution in any sense," the court has "flexib[ility]" with respect to the receipt of "material that would not be admissible in an adversary criminal trial").

We remand for the district court to reconsider the government's motion, taking into account whether it was more likely than not that Villiers committed a crime while on release.

E. *Other Issues*

A finding that the individual violated a release condition does not, of course, fully resolve a request for revocation. If the court makes such a finding, it must then decide what remedy for the violation is appropriate. With respect to that issue in the present case, the court should take into account, *inter alia*, evidence in the record as to Villiers's past criminal history (*see* Deportation Officer Decl. ¶ 7 (describing Villiers's 2019 conviction of assault with intent to cause physical injury with a weapon or instrument)). In addition, we note that on appeal the government,

31

without permission from the Court, included in its appendix evidence of additional NYPD arrests of Villiers after the district court's August 2020 Order denied the government's request to re-detain him. Villiers moved to strike that new material as impermissible. We have not considered that evidence on this appeal, and we deny the motion to strike it as moot. On remand, however, the parties are free to offer new or previously unpresented evidence to the district court as to Villiers's conduct while on release.

If the district court finds that Villiers committed a crime while on release, its determination of an appropriate remedy should also take into account, *inter alia*, public safety interests, as well as such updated information as the parties will provide with respect to Villiers's health condition and the current COVID-related conditions at whatever facility the government would now propose to send Villiers for re-detention. Such hearings as are required on remand should be pursued expeditiously.

CONCLUSION

We have considered all of Villiers's contentions in support of the district court's ruling that an individual cannot be found to have violated a condition that he not commit a crime while on release unless he has been convicted of the crime, and have found them to be without merit. The order of the district court denying the government's motion to vacate or modify the preliminary injunction, in order to allow ICE to re-detain Villiers, is vacated, and the matter is remanded for proceedings not inconsistent with this opinion.